IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VIRGINIA L. FALCONER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-247 Erie |
| ) | |
| PAPCO, INC. AND HOOVER OIL ) | |
| FIELD SUPPLY COMPANY AND ) | |
| DARRYL PIERCE, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., DISTRICT J.

Currently pending before the Court is the Defendants' Motion for Summary Judgment [Doc. No. 32].

**I. BACKGROUND**

Plaintiff, Virginia L. Falconer, (hereinafter "Plaintiff" or "Falconer"), was born on March 9, 1960 and began her employment with Papco, Inc. and Hoover Oil Supply Company (hereinafter "Papco" and "Hoover" respectively), on November 29, 1999 when she was approximately 39 years old. Falconer Dep. P. 4; Myers Dep. Ex. 4. Papco owns and operates oil and gas wells with its main office located in Warren, Pennsylvania. Amended Complaint ¶ 4; Pierce Aff. ¶ 2. Hoover, a subsidiary of Papco, sells oil and gas production supplies. Petersen Dep. p. 4; Pierce Aff. ¶ 3. Defendant Darryl Pierce (hereinafter "Pierce"), is part owner and the secretary/treasurer of Papco. Petersen Dep. pp. 4-5; Pierce Aff. ¶ 1. Kristine Myers (hereinafter "Myers"), was at all material times Plaintiff's immediate supervisor. Falconer Dep. p. 24; Myers Dep. pp. 5; 7-9.

Plaintiff performed general accounting and clerical functions. Falconer Dep. pp. 14- 15. Her responsibilities included completing and forwarding oil well completion reports to the Department of Environmental Protection ("DEP") in Pennsylvania and to the Texas Railroad Commission in Texas. Falconer Dep. p. 15. In order to complete the reports, Plaintiff gathered information from various individuals, including but not limited to Pierce, Myers and Jesse Olson (hereinafter "Olson"), who was an employee of Olson Drilling Company. Falconer Dep. p. 22;

1

Olson Dep. p. 4. Olson Drilling Company performed drilling services for Papco. Olson Dep. p. 7; Pierce Aff. ¶ 6; Pierce Dep. Ex. 6. Plaintiff met with Olson periodically throughout her employment with Papco in order to obtain the required information to complete the reports. Falconer Dep. pp. 28-29.

Plaintiff claimed that during her employment with Defendant, Pierce demonstrated, through his conduct, that he was interested in developing more than a working relationship with her. See Amended Complaint ¶ 19. In this regard, Plaintiff testified that he would occasionally put his arm around her shoulder and would stand too close when speaking to her. Falconer Dep. pp. 73; 78. She relayed an incident in June 2005 when he introduced her as his wife, referred to her as "honey" and kissed her on the cheek. Falconer Dep. p. 76. On another occasion, Plaintiff testified that Pierce came out of his bedroom with his bathrobe "wide open" and his underwear exposed while they were both staying at a company apartment during a business trip in June 2005. Falconer Dep. pp. 91-92. As a result, Plaintiff requested that Pierce take her to another company apartment where she stayed by herself for the remainder of the trip. Falconer Dep. pp. 95-96.

On Friday, August 19, 2005, Plaintiff spoke with Olson by telephone who apologized for not inviting her to his daughter's wedding. Falconer Dep. pp. 58-59. He informed her that he could not do so because his wife assumed they were having an affair. Id. Pierce and his wife attended the wedding and it was Plaintiff's "assumption" that Pierce heard about her alleged affair at the wedding from Olson's wife and thereafter terminated her because of his jealousy. Falconer Dep. pp. 51-53; 56; 64.

Plaintiff claimed that Friday August 19, 2005 was uneventful and there was no indication that Pierce had any issue at that time with her job performance. Falconer Dep. pp. 52. The record reflects that Pierce visited Myers at her home on Sunday evening, August 21, 2005 and instructed her to terminate Plaintiff the following day. Pierce Dep. p. 75; Myers Dep. pp. 18-21. Pursuant to Pierce's instruction, Myers terminated Plaintiff on Monday, August 22, 2005. Falconer Dep. 57-58; Myers Dep. p. 32. Plaintiff was 46 years old at that time and was replaced by a female who was 28 years old. Amended Complaint ¶ 38; Pierce Aff. ¶ 9.

Pierce denied that Plaintiff's termination had anything to do with her affair with Olson

and further claimed that the subject of her alleged affair never came up at the wedding. Pierce Dep. Vol I pp. 42-43. Rather, Pierce testified that he had been considering terminating Plaintiff for some time because of her failure to timely complete the regulatory reports, interpersonal problems with employees and customers and excessive personal phone calls. Pierce Dep. Vol. I pp. 15; 18-20; 33; 35; 40; Pierce Dep. Vol. II p. 17. The need to terminate her was "brought to a head" according to Pierce by the fact that a new employee was scheduled to start on Monday, August 22, 2005 and he did not want the individual to be exposed to Plaintiff. Pierce Dep. Vol. I pp. 35-36; Pierce Dep. Vol. II p. 11.

As a result of her termination, Plaintiff brought suit pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.,* (the "ADEA"), and the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951 *et seq*., (the "PHRA"). Defendants have moved for summary judgment with respect to her claims.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita, 475 U.S. at 587).

3

## III. Discussion

A. **Title VII claims**[1]

1. **Discriminatory discharge**

In order to establish a prima facie case with respect to her discriminatory discharge claim, Plaintiff must demonstrate that she: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Jones v. Sch. Dist. of Philidelphia, 198 F.3d 403, 410-011 (3rd Cir. 1999); Samuels v. Postmaster General, 257 Fed. Appx. 585, 586 (3rd Cir. 2007); Moussa v. Commonwealth of Pennsylvania, 289 F. Supp. 2d 639, 649 (W.D.Pa. 2003). The central focus of the inquiry is always whether the employer treated the plaintiff differently because of her sex. Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 352 (3rd Cir. 1999) (citations omitted). The prima facie case requires a plaintiff to present "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." Id. at 355 (citations omitted).

In her Memorandum in Opposition to Defendants' Summary Judgment, Plaintiff describes the nature of her Title VII gender discrimination claim as follows:

> Plaintiff will show that Darryl Pierce, the decision-maker, was interested in a sexual relationship with Falconer and that he monitored whether she was interested in someone other than himself. Despite claiming that she was a terrible employee for six years, he suddenly, without any notice, fired her under circumstances from which it appeared that he believed that she was having an affair with an individual contracted to drill oil wells for his company, but not with him. Wouldn't any human being feel rejected, worthless, perhaps angry? Pierce must have.

See Plaintiff's Memorandum in Opposition to Summary Judgment p. 2 [Doc. No. 52]. At deposition, Plaintiff testified as follows:

• • •

Q. Why do you think you were fired from Papco and/or Hoover?

---

[1] The Third Circuit has consistently applied the same legal standard in analyzing claims brought pursuant to Title VII and the PHRA. Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 317 n.3 (3rd Cir. 2000); Jones, 198 F.3d at 409. Therefore, although we analyze Plaintiff's claim under Title VII only, our analysis is equally applicable to her PHRA claim.

4

> • • •
>
> A. I feel that I was let go from Papco due to Mr. Pierce assuming that I was having an affair with Jesse Olson.
>
> • • •
>
> Q. And so I'm clear, you believe you were terminated because Mr. Pierce learned or heard that you may have been having an affair with Mr. Olson?
> A. Correct.
> Q. Is there any other reason you believe you were terminated?
> A. No.
>
> • • •
>
> Q. Do you have an opinion why Darryl [Pierce] would have fired you for having an affair?
>
> • • •
>
> A. Outside of any long explanation, jealousy.
> Q. And why do you believe he was jealous?
> A. Darryl [Pierce] enjoys the company of women, and the girls in his office are like his possession. And he doesn't really like you fraternizing with other business colleagues or people that we deal with.
> Q. That's basically your opinion, why you would think Darryl [Pierce] would fire you for having an affair, correct, because he would have been jealous?
> A. Yeah. That's short and sweet, yes.
> Q. Is there a longer explanation you have?
> A. No.
> Q. Is there any other explanation that you have?
> A. No.
>
> • • •

Falconer Dep. pp. 49; 53; 63-64.

The threshold issue, therefore, is whether Plaintiff's claim that she was terminated because of Pierce's jealousy over her alleged affair can be characterized as gender-driven discrimination within the meaning of Title VII. For the reasons that follow, we conclude that it cannot.

In <u>DeCintio v. Westchester County Medical Center</u>, 807 F.2d 304 (2nd Cir. 1986), <u>cert. denied</u>, 484 U.S. 825 (1987), male physical therapists filed suit claiming that they were victims of gender discrimination under Title VII. They claimed that their supervisor disqualified them from a promotion so he could fill the position with a woman with whom he was involved in a romantic relationship. The court phrased the "dispositive issue" as "whether, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1982), the phrase 'discrimination on the basis of sex' encompasses disparate treatment premised not on one's gender, but rather on a romantic relationship between an employer and a person preferentially hired." <u>DeCintio</u>, 807 F.3d at 306.

5

The court began its analysis with the following observation:

> Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As the Supreme Court noted in *Meritor Savings Bank, FSB v. Vinson,* __ U.S. __, 106 S.Ct. 2399, 91 L.Ed. 2d 49 (1986), because the word "sex" was added to Title VII shortly before passage, "we are left with little legislative history to guide us in interpreting the Act's prohibition against discrimination based on 'sex.' " *Id.* at __, 106 S.Ct. at 2404. However, the other categories afforded protection under Title VII refer to a person's status as a member of a particular race, color, religion or nationality. "Sex," when read in this context, logically could only refer to membership in a class delineated by gender, rather than sexual activity regardless of gender. As the Supreme Court noted in *Trans World Airlines v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), "[t]he emphasis of both the language and the legislative history of [Title VII] is on eliminating discrimination in employment; similarly situated employees are not to be treated differently *solely because they differ* with respect to race, color, religion, sex, or national origin." *Id.* at 71, 97 S.Ct. at 2270 (emphasis added). The proscribed differentiation under Title VII, therefore, must be a distinction based on a person's sex, not on his or her sexual affiliations. *See Los Angeles Department of Water & Power v. Manhart,* 435 U.S. 702, 707 n. 13, 98 S.Ct. 1370, 1375 n. 13, 55 L.Ed.2d 657 (1978) (quoting *Sprogis v. United Air Lines,* 444 F.2d 1194, 1198 (7th Cir.) (Title VII was intended to "strike at the entire spectrum of disparate treatment of men and women"), *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971)); *see also Meritor,* 106 S.Ct. at 2404 (quoting same).

DeCintio, 807 F.2d at 306-307. The court concluded that although the supervisor's conduct was "unfair," the plaintiffs were not discriminated against because they were males but rather "because Ryan preferred his paramour." Id. at 308.

In Bush v. Raymond Corp., 954 F. Supp. 490 (N.D.N.Y. 1997), the court held that a plaintiff's discriminatory discharge claim failed insofar as it asserted that she was discharged because of her supervisor's perception that she and her previous supervisor had a sexual relationship. Bush, 954 F. Supp. at 498. The plaintiff in Bush alleged that she was terminated due to the fact that her supervisor "was jealous of what he believed to be the special treatment" she was receiving due to her "alleged sexual relationship" with a former supervisor. Id. at 498. Relying on DeCintio, the court found that such a contention was clearly insufficient to support a

6

claim of gender discrimination under Title VII. Id.

Likewise in Huffman v. City of Prairie Village, Kansas, 980 F. Supp. 1192 (D.Kan. 1997), the plaintiff, a police dispatcher, alleged that she was subjected to a sexually hostile work environment and claimed that, *inter alia*, her female supervisor "in a jealous rage" and out of an apparent romantic interest in a police detective, created an intolerable hostile work environment. Huffman, 980 F. Supp. at 1199. The court noted:

> Plaintiff admitted in her deposition that Lt. Young took various actions against her because Lt. Young was jealous of and angry with her due to her involvement with Lt. Young's boyfriend. Plaintiff suggests that the actions taken by Lt. Young as a result of Lt. Young's beliefs concerning plaintiff's relationship with another police officer constitute gender discrimination because such actions would not have been taken against plaintiff but for her gender. We cannot agree with plaintiff's expansive definition of discrimination based upon sex.

Huffman, 980 F. Supp. at 1199. Relying on the DeCintio, the court stated:

> There is no indication that Lt. Young's actions were taken because of the plaintiff's sex. Contrary to plaintiff's apparent belief, the mere fact that plaintiff is female does not make Lt. Young's conduct discriminatory. Plaintiff has the burden of demonstrating that the reasons for Lt. Young's behavior were illegal ones. Where plaintiff has admitted that Lt. Young acted for reasons other than illegal ones, the court cannot hold the defendant responsible.

Id. (citations omitted); see also Ramnauth v. Potter, 2007 WL 2406962 at *6 (S.D.N.Y. 2007) (finding that jealously is not "discriminatory animus") (citation omitted).

Collectively, these cases stand for the sound proposition that Title VII is not and cannot be a vehicle to redress every injustice in the workplace. Plaintiff's claim that her precipitous and quite unexpected termination was the product of Pierce's jealousy fueled by a rumor of an affair is insufficient to support a Title VII gender discrimination claim. Here, given the absence of gender-driven animus, Plaintiff's Title VII discriminatory discharge claim fails.

### 2. *Quid pro quo* claim

Plaintiff has also asserted a *quid pro quo* claim.[2] A Title VII claimant (and a claimant

---

[2]As reflected in the transcript of a telephonic status conference with counsel on May 15, 2008, Plaintiff's counsel was unaware that a *quid pro quo* claim was even in play. See Telephonic Status Conference Tr. p. 9 [Doc. No. 71]. By way of background, he had filed a

under the PHRA) must exhaust administrative remedies prior to seeking relief in federal court. Burgh v. Borough Council of Montrose, 251 F.3d 465, 470 (3rd Cir. 2001). The relevant test in determining whether a plaintiff was required to exhaust her administrative remedies is whether the acts alleged in the subsequent suit "are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3rd Cir. 1996) (quoting Waiters v. Parson, 729 F.2d 233, 237 (3rd Cir. 1984); see also Robinson v. Dalton, 107 F.3d 1018, 1024-25 (3rd Cir. 1997).

Plaintiff's Second Amended PHRC Complaint (hereinafter "PHRC charge"), alleges, in pertinent part, the following:

. . .

> 3. The Complainant alleges that on or about August 22, 2005 she was discharged by Respondents PAPCO, Inc[.] and Hoover Oil Field Supply because of her gender (female) as more fully set forth below:
>
> . . .
>
> 3.5 Complainant has discovered that the stated reason given to third parties for the action taken was for "personal reasons" by the Secretary-Treasurer **Darryl Pierce**.
> 3.6 It is common knowledge and part of the corporate culture of Respondents that Secretary-Treasurer Darryl Pierce has had numerous extramarital relationships and has not been discharged.
> 3.7 Furthermore, Complainant alleges that she was discharged because she was falsely believed by Secretary-Treasurer Darryl Pierce to be having an extramarital affair with Jesse Olson, who is employed as an oil driller by Respondent(s).
> 3.8 Secretary-Treasurer Darryl Pierce was upset with Complainant based upon his false belief, and caused

---

Second Amended Complaint which contained a *quid pro quo* claim but then voluntarily withdrew the Second Amended Complaint rather than "get tangled up" in addressing the merits of Defendants' 12(b)(6) motion which argued, *inter alia*, that Plaintiff had not administratively exhausted the *quid pro quo* claim. See Telephonic Status Conference Tr. pp. 6-8; Motion to Dismiss [Doc. No. 13]; and Brief in Support [Doc. No. 14]. The Court pointed out during the telephonic status conference that the Amended Complaint at paragraph 34 alleged that "Darryl Pierce caused Plaintiff to be discharged in whole or in part because Plaintiff rejected his sexual advances." See Telephonic Status Conference Tr. pp. 8-9; Amended Complaint ¶ 34. The Court then granted Plaintiff leave to file a supplemental brief addressing Defendants' contention that the *quid pro quo* claim had not been administratively exhausted. See Telephonic Status Conference Tr. p. 9. Given the fact that the exhaustion issue has been fully briefed and the administrative charge made a part of the record, we are converting the Rule 12(b)(6) motion filed by Defendants in connection with the Second Amended Complaint into a Rule 56 motion.

8

> Complainant to be discharged but did not discharge **Jesse Olson**.
>
> 3.9 Secretary-Treasurer Darryl Pierce did aid, abet and cause Respondents **PAPCO**, **Inc. AND Hoover Oil Field Supply** to commit the unlawful act of discharging Complainant because of gender.
>
> • • •

See Second Amended PHRC Complaint [Doc. No. 69-6] (emphasis in original). In her Amended Complaint, however, she alleges for the first time:

> Darryl Pierce caused Plaintiff to be discharged in whole or in part because Plaintiff rejected his sexual advances.

See Amended Complaint ¶ 34.

We find that Plaintiff's belated *quid pro quo* claim is not within the fair scope of the PHRC charge or the investigation that could have been expected to flow from it. On the contrary, the PHRC charged asserts a claim of disparate treatment based upon the contention that although Pierce believed that both she and Olson were having an affair, he chose to terminate only her. See Johnson v. Chase Home Finance, 309 F. Supp. 2d 667, 671 (E.D.Pa. 2004) (holding that retaliation claim was not exhausted where formal charge contained no reference to a retaliation claim or stated facts which would support such a claim; in view of a total absence of any retaliation allegations, an EEOC investigation could not reasonably be expected to grow out of any EEOC investigation); King v. M.R. Brown, Inc., 911 F. Supp. 161, 166 (E.D.Pa. 1995) (holding that plaintiff's *quid pro quo* harassment claim was not related to plaintiff's hostile environment claim nor likely to have been included in the EEOC's investigation of plaintiff's charge); Kerrison v. Kane Community Hospital, 2000 WL 33223084 at *11 (W.D.Pa. 2000) (finding that plaintiff's hostile environment claim, which stated a different cause of action not raised in his EEOC complaint, was not fairly within the scope of his prior EEOC complaint alleging disparate treatment in connection with his discharge); Sandom v. Travelers Mortgage Services, Inc., 752 F. Supp. 1240, 1248 (D.N.J. 1990) (finding plaintiff's sexual harassment claim sufficiently distinct from EEOC charge alleging termination on the basis of gender).[3]

---

[3]If Plaintiff had proceeded *pro se* in drafting the PHRC charge, our conclusion as to the lack of exhaustion would be the same. However, it is buttressed by the fact that her counsel signed the charge. See, e.g., Kocian v. Getty Refining and Marketing Co., 707 F.2d 748, 755 (3rd

9

Given Plaintiff's failure to have exhausted her *quid pro quo* claim summary judgement is appropriate.

    **B.**    **ADEA claim[4]**

Finally, Plaintiff has advanced an age discrimination claim. In the first step of the McDonnell Douglas burden shifting framework under the ADEA, a plaintiff must show that she was (1) a member of the protected class, i.e. was age 40 or older; (2) qualified for the position; (3) discharged from the position; and (4) replaced by a sufficiently younger person to create an inference of age discrimination. See, e.g., Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3rd Cir. 2001); Connors v. Chrysler Financial Corp., 160 F.2d 971, 973-74 (3rd Cir. 1998).

Plaintiff's ADEA claim fails, however, on the pretext prong of the burden shifting paradigm under Fuentes v. Perskie, 32 F.3d 759, 765 (3rd Cir. 1994) and its progeny. As previously discussed, Plaintiff testified categorically that she was terminated because of Pierce's jealously over her alleged affair with Olson. When questioned at deposition, she was unable to supply any factual basis to support her contention that she was the victim of age discrimination and merely speculated that Darryl Pierce "possibly [wanted] a younger staff." Falconer Dep. p. 123-124.

Plaintiff's pretext argument is essentially premised on the proposition that if, in fact, she was such a poor employee the Defendant would not have been so "slow on the trigger" to

---

Cir.), cert. denied, 464 U.S. 852 (1983) (stating that equitable tolling is particularly appropriate in cases involving lay persons unfamiliar with the complexities of the administrative process and noting that "[w]e have distinguished those cases, however, from cases such as this one involving Title VII litigants who are represented by counsel."), rev'd on other grounds in Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1415 (3rd Cir. 1991) (*en banc*); Johnson, 309 F. Supp. 2d at 672 ("The Court notes that in this case, the failure to include a claim of retaliation in the charge is particularly unjustified given that plaintiff was represented by counsel experienced in EEOC matters throughout the administrative proceedings.") (footnote omitted); Crescenzo v. Hajoca Corp., 2008 WL 1815326 at *3 n.2 (E.D.Pa. 2008) (refusing to consider additional incidents of harassment by co-workers that were not included in plaintiff's EEOC charge where plaintiff was represented by counsel and had the opportunity to raise those facts but failed to do so).

[4]As with Plaintiff's Title VII claim, "the same legal standards and analysis are applicable to claims under both the ADEA and the PHRA and hence it is not uncommon to address such claims collectively." Glanzman v. Metro Management Corp., 391 F.3d 506, 509 n.2 (3rd Cir. 2004) (internal quotation omitted).

terminate her. In this regard, Plaintiff states:

> Falconer also proved pretext, and this is an argument completely ignored by the defendants in their reply brief, by showing that defendants were "Slow on the Trigger". Defendants have offered no explanation whatsoever why Falconer who was allegedly a poor employee from anywhere from 3.5 years to her entire 6 years of employment, was suddenly discharged right around the time when Pierce went to the wedding of the daughter of the male who supposedly had an affair with Falconer? Why so slow on the trigger? Why was she fired then after all those years? Clearly, this is proof of pretext.

See Plaintiff's Sur Reply Brief Opposing Summary Judgment p. 10 [Doc. No. 70]. The temporal proximity between Pierce learning of the alleged affair on Saturday and her termination on Monday, while circumstantially supportive of her contention that jealousy motivated her dismissal, lends no support in her effort to raise a triable issue of fact relative to pretext with respect to her age discrimination claim.[5]

Finally, on the issue of pretext, we note that Plaintiff does not dispute that her reports had been historically untimely, that she had conflicts with other employees, or that she had been counseled by Myers regarding her attitude and excessive personal phone calls. Falconer Dep. pp. 37; 39; 82-83; 143-148; 151; 154-155; 158-162. Summary judgment is therefore appropriate with respect to Plaintiff's age claim as well.

### IV. CONCLUSION

An appropriate Order follows.

---

[5] Clearly, Plaintiff does not contend that Pierce suddenly learned at the wedding that she was 46 years old and immediately ordered her termination as a result.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VIRGINIA L. FALCONER,　　　　　) | |
| 　　　　　　　　　　　　　　　　) | |
| 　　　　Plaintiff,　　　　　　　) | |
| 　　　　　　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　) | Civil Action No. 06-247 Erie |
| 　　　　　　　　　　　　　　　　) | |
| PAPCO, INC. AND HOOVER OIL　　 ) | |
| FIELD SUPPLY COMPANY AND　　　 ) | |
| DARRYL PIERCE,　　　　　　　　 ) | |
| 　　　　　　　　　　　　　　　　) | |
| 　　　　Defendants.　　　　　　 ) | |

## ORDER

AND NOW, this 17th day of June, 2008, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Motion for Summary Judgment of Defendants Papco, Inc., Hoover Oil Field Supply Company and Darryl Pierce [Doc. No. 32] is GRANTED. Judgment is hereby entered in favor of Defendants, Papco, Inc., Hoover Oil Field Supply Company and Darryl Pierce, and against Plaintiff, Virginia L. Falconer.

The clerk is hereby directed to mark the case closed.


　　　　　　　　　　　　　　　　　　　　　　s/ Sean J. McLaughlin
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

cm: All parties of record.